Rural Water District — Franchise — Annexation A Rural Water District, once formed, constitutes a franchise from the State, and subsequent annexation by a city does not affect the District's right to serve the area in the district. The Attorney General has had under consideration your letter wherein you ask: "1. Does the creation of a rural water district give the water district a `franchise' for sale of water in the land area included in the water district? "2. When a city or town annexes territory included in the rural water district, what are the rights with reference to service of water by the city and the rural water district?" The federal statutes providing for the development of certain water and disposal facilities are contained in Title7 U.S.C.A. 1926, as follows: "(a)(1) The Secretary Agriculture is also authorized to make or insure loans to associations, including corporations not operated for profit, and public and quasi-public agencies to provide for the application or establishment of soil conservation practices, shifts in land use, the conservation, development, use, and control of water, and the installation or improvement of drainage or waste disposal facilities, and recreational developments, all primarily serving farmers, ranchers, farm tenants, farm laborers, and other rural residents, and to furnish financial assistance or other aid in planning projects for such purposes. "(b) The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such `association' to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event." The enabling statutes in the State of Oklahoma are contained in the "Rural Water and Sewer Districts Act", O.S.L. 1967, c. 148, Section 1, (82 O.S. 1301 [82-1301] — 82 O.S. 1323 [82-1323] (1968)). This Act provides for the application for such district to be submitted to the County Commissioners of the County in which the district is to be located, and specifically provides in Section 6 of the Act as follows: ". . . If, upon such consideration, it shall be found that such petition is in conformity with the requirements of this act, and that such a district should be created the board of county commissioners shall thereupon immediately declare the land described in the petition or any part thereof to be incorporated as a district under the name of `Rural Water and/or Sewer District No. __, County, Oklahoma, (inserting number in order of incorporation and name of county) and thereupon the district shall be a body politic and corporate and an agency and legally constituted authority of the State of Oklahoma for the public purposes set forth in this act. . . ." (Emphasis added) It is further provided in Section 9 of the Act (82 O.S. 1309 [82-1309] (1968)), as follows: "Every district incorporated hereunder shall have perpetual existence, subject to dissolution as provided by this act, and shall have power: . . . . "(4) To borrow money and otherwise contract indebtedness for the purposes set forth in this act and, without limitation of the generality of the foregoing, to borrow money and accept grants from the United States of America, or from any corporation or agency created or designated by the United States of America and in connection with any such loan or grant, to enter into such agreements as the United States of America or such corporation or agency may require; . . . ." State v. Garrison, Okl., 348 P.2d 859, in the first paragraph of the syllabus provides: "The word `franchise' is generally used to designate right or privilege conferred by law. It represents right and privilege of doing that which does not belong to citizens generally, irrespective of whether net profit accruing from the exercise of right and privilege is retained by franchise holder or is passed to a state school or political subdivision of State." The statutory language authorizing the borrowing of funds from the United states of America and the power to make any required agreements required to obtain such funds, and the federal statute specifically excluding any curtailment or limitation of the district by the inclusion within the boundaries of a municipality further strengthens the exclusiveness of the district. Thus, both Congress and the Oklahoma Legislature intended that the district would not be curtailed or limited by a municipality, or be required to obtain any license or franchise from the city, even after annexation. This manifest a congressional and legislative intent that the district would be operative, after commencement regardless whether the subsequent annexation by a city or town would make the residents of the district "urban" instead of "rural." It is clear that the legislature by establishing the district as a "body politic and corporate and an agency and legally constituted authority of the State of Oklahoma" and by further conferring powers to use streams, streets, roads, alleys, highways or any right-of-way, easements or other similar property rights or any lands owned or held by the State of Oklahoma, the use which is not otherwise conferred except by franchise, intended the district to have exclusive and perpetual grant to operate the district. The grant to use the public lands of the State of Oklahoma would be a "franchise." Although a city is usually empowered to use its police powers to create building and zoning ordinances for the welfare of its citizens, it cannot regulate state property. 62 C.J.S. Municipal Corporations, Section 157, provides as follows: "Property of the state is exempt from municipal regulation in the absence of waiver on the part of state of its right to regulate its own property; and such waiver will not be presumed. The municipality cannot regulate or control any property which the state has authorized another body or power to control." By the terms of the Rural Water and Sewage District Act, supra, the district becomes a body politic and an agency and authority of the State of Oklahoma to develop and operate the district. The district being a state agency, exercises, to a limited extent, powers of government vested by enactment from which it draws its right to exist. To deprive the water district of the area defined in the corporate grant, even though it is later annexed by a city, would not only be contrary to the mandatory terms of the statute, but would be violative of the franchise granted by the state through the County Commissioners. Therefore, the Attorney General is of the opinion that your first question be answered in the affirmative, that the creation of a rural water district pursuant to the Water and Sewage District Act constitutes a "franchise" within the land area as authorized by the County Commissioners in the creation of the District. The Attorney General is of the opinion that once the district is created and is properly constituted, it has exclusive right to serve the area notwithstanding annexation of the area of any part of the area by a city or town. The annexing city has no right or authority to interfere with the legislative grant and cannot interfere with the operation of the water district or in any manner compete with the district until such time as the district is terminated as provided by law. (Duane Lobaugh) ** SEE: OPINION NO. 71-115 (1971) — THIS OVERRULES THIS OPINION **